**UNITED STATES of America**

v.

**Gerardo MACHADO, et al., Defendants.**

**No. 12 Cr. 379.**

United States District Court,
S.D. New York.

Nov. 22, 2013.

Kan Min Nawaday, Santosh Shankaran Aravind, U.S. Attorney's Office, New York, NY, for United States of America.

Lori Cohen, Cohen & Funk, P.C., Ronald Leon Garnett, Law Offices of Ronald L. Garnett, Meringolo & Associates, P.C., New York, NY, Kelley J. Sharkey, Kelley J. Sharkey, Esq., Brooklyn, NY, for Gerardo Machado, et al.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

By Superseding Indictment dated May 16, 2012 (the "Indictment"), a grand jury charged defendants Maria Duprey ("Duprey"), Brian Gilbert ("Gilbert"), Lazaro Martinez ("L. Martinez"), Rafael Martinez ("R. Martinez"), and Rossell Pauley ("Pauley") (collectively, the "Moving Defendants"), along with defendants Arnaldo Mendinueta–Ibarro, Gerado Machado, and Benito Monterey, with conspiring to distribute and possessing with intent to distribute 280 grams or more of "crack" cocaine, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(A). (Dkt. No. 5.)[1]

The Moving Defendants—either through their respective motions or by joining another Moving Defendant's motion—move for orders to: (1) suppress Title III wiretap evidence; (2) direct the Government to provide a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure; (3) direct the Government to produce material pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny; and (4) direct the Government to disclose evidence it intends to offer at trial under Rule 404(b) of the Federal Rules of Evidence. (Dkt. Nos. 75, 76, 78, 79, 80.) In addition, Pauley moves to sever his trial from the trial of his co-defendants (Dkt. No. 78) and R. Martinez moves to strike the use of his alias "Rafaelito" from the Indictment as surplusage (Dkt. No. 75).[2]

For the reasons set forth below, the Moving Defendants' motions are DENIED, Pauley's severance motion is DENIED, and R. Martinez's motion to strike the use of his alias is DENIED.

## I. *WIRETAP EVIDENCE*

The Moving Defendants move to suppress wire communications intercepted by law enforcement officials pursuant to an Order issued by Honorable Robert Sweet dated November 7, 2011 (the "Order") and extensions or related subsequent orders issued on December 15, 2011 by Honorable Miriam Goldman Cedarbaum; on January 27, 2012 by Honorable John Keenan; and on April 18, 2012 by Honorable Richard Berman (collectively, the "Subsequent Orders").[3] The Moving Defendants argue

---

1. The Indictment also charged Evelyn Mendinueta ("Mendinueta") as a co-conspirator. Mendinueta pled guilty and was sentenced on February 4, 2013. (Dkt. No. 62.)

2. Gilbert also moved to suppress post-arrest statements that he made to law enforcement officers. (Dkt. No. 76.) The Government consented to a hearing on disputed factual issues. The Court heard testimony on October 10, 2013, after which it denied the motion. (*See* Order dated November 12, 2013, Dkt. No. 118.)

3. The Moving Defendants have standing pursuant to 18 U.S.C. § 2518(10)(a) to contest the wiretaps because Duprey was named as a target subject in the Order and the remaining Moving Defendants were named as subjects in the Subsequent Orders. The statute permits "[a]ny aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof" to "move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom." 18 U.S.C.

that the Order improperly authorized the use of electronic wire surveillance without a sufficient showing that other investigative procedures would not have achieved the goals of the investigation. The Court is not persuaded that the Order and Subsequent Orders were issued improperly and thus finds that the evidence collected from the wiretaps is admissible.

## A. LEGAL STANDARD

A court can authorize electronic wire surveillance if "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous," 18 U.S.C. § 2518(3)(c), and probable cause requirements have been met, 18 U.S.C. § 2518(3)(a, b, d). The Second Circuit's interpretation of the statute requires the applicant for wiretap surveillance to "inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods." *United States v. Concepcion,* 579 F.3d 214, 218 (2d Cir.2009) (quoting *United States v. Diaz,* 176 F.3d 52, 111 (2d Cir.1999)). Thus, the applicant does not need to show that "all other possible means of investigation have been exhausted by investigative agents." *Diaz,* 176 F.3d at 111 (internal citation omitted).

■ In reviewing a ruling on a motion to suppress wiretap evidence, this Court must give "considerable deference" to the issuing judicial officer's finding, which may be overturned only for an abuse of discre-

tion. *See Concepcion,* 579 F.3d at 217. This Court's consideration is limited to whether the facts in the application were "minimally adequate" to support the issuing judge's decision. *Id.*

## B. DISCUSSION

■ The Moving Defendants argue that the facts in the wiretap application authorized by the Order itself demonstrated that normal investigative methods were in use and succeeding at the time the application was submitted. These methods, according to the Moving Defendants, would be sufficient to achieve the investigation's goals. Therefore, the Moving Defendants contend that all evidence derived from the Order and the Subsequent Orders must be suppressed because the first application failed to demonstrate the necessity of wiretapping.[4]

The Moving Defendants' arguments are unpersuasive. The wiretap application made clear that although cooperating witnesses had been successful in uncovering some information, the witnesses' value in providing intelligence regarding other goals of the investigation such as identifying the source of supply, stash house locations, and other members of the drug conspiracy was limited. One cooperating witness had a limited relationship with the defendants as a "retail purchaser," and the other had been incarcerated, which meant that he could not be used without arousing suspicion. In addition, the application explained how an undercover officer would not be able to reveal the full scope of the organization's activi-

§ 2518(10)(a). An "aggrieved person" is defined as "a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11).

**4.** R. Martinez also argues that the wiretap application contained false allegations but provides no factual support for this conten-

tion. Because the Court presumes that the authorizing judge "will scrutinize any application and will scrupulously impose the restrictions required by statute," *United States v. Tortorello,* 480 F.2d 764, 783 (2d Cir.1973), R. Martinez's conclusory allegations are insufficient grounds for suppression.

ties because the members would be suspicious of an outsider.

Specific facts about the ineffectiveness of physical surveillance were also set forth in the application, such as the organization members' use of counter-surveillance during undercover purchases of "crack" cocaine and use of non-public areas for narcotics transactions. In addition, the applicant explained how search warrants had been unsuccessful because law enforcement agents could not identify the specific location of the stash house within multi-unit buildings and one executed warrant led to heightened suspicion of law enforcement scrutiny. Use of arrests had been similarly unsuccessful because arrestees refused to cooperate. The applicant also stated her belief that further use of search warrants or arrests would arouse suspicion and jeopardize the investigation. Finally, the application demonstrated the limited utility of telephone records, which typically contain false subscriber names and cannot provide evidence of the organization members' identities or roles.

Taken together, the facts in the wiretap application were more than "minimally adequate" to support granting the application. *See Concepcion,* 579 F.3d at 217. Accordingly, the Court finds that in issuing the Order and Subsequent Orders Judges Sweet, Cedarbaum, Keenan, and Berman did not abuse their discretion in finding that the wiretaps at issue here were necessary. The facts presented to the Court in the wiretap application adequately demonstrated that normal investigative techniques were inadequate, reasonably unlikely to succeed, or too dangerous.

## II. BILL OF PARTICULARS

The Moving Defendants move for a bill of particulars. They argue that the Indictment does not allow them to adequately prepare for trial because it does not specif-ically describe each narcotics transaction in which they were involved. In addition, the Moving Defendants claim that the voluminous discovery in this case presents too many documents to search through. The Moving Defendants request that the Government identify the date, time, and quantity of narcotics of each transaction they allegedly participated in and the total amount of narcotics allegedly attributable to each of them. The Government opposes this request because it contends that the Indictment and produced discovery provide sufficient notice of the charges to the Moving Defendants. The Court agrees with the Government and denies the motion.

### A. LEGAL STANDARD

Rule 7(f) of the Federal Rules of Criminal Procedure permits the Court to direct the Government to submit a bill of particulars to defendants who claim that they have not been provided sufficient information about the charges the Government has brought against them. "A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Feola,* 651 F.Supp. 1068, 1132 (S.D.N.Y.1987), *aff'd,* 875 F.2d 857 (2d Cir.1989). Therefore, the Court considers whether the information sought is necessary, not just helpful, to the defendant. *See United States v. Facciolo,* 753 F.Supp. 449, 451 (S.D.N.Y.1990), *aff'd sub nom., United States v. Skowronski,* 968 F.2d 242 (2d Cir.1992). In conspiracy cases, the indictment does not need to provide "each and every act" committed in furtherance of the conspiracy. *United States v. Cohen,* 518 F.2d 727, 733 (2d Cir.1975). In addition, a bill of particulars is unnecessary where the information sought is provided in discovery. *See Unit-*

ed States v. Jimenez, No. 10 Cr. 316, 2011 WL 308401, at *7 (S.D.N.Y. Jan. 28, 2011) (finding that the indictment coupled with discovery provided notice to the defendant); *see also United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir.1987) (stating that an order for a bill of particulars is usually not granted where the information is provided in the indictment or another "acceptable alternative form").

## B. *DISCUSSION*

 The Court finds that a bill of particulars is not necessary to the defense in this case. The straightforward Indictment supplemented by the documents the government has produced in discovery put the Moving Defendants sufficiently on notice as to the details of the alleged narcotics conspiracy. *See Jimenez*, 2011 WL 308401 at *7. Discovery includes nearly four thousand audio recordings of intercepted calls with searchable line sheets of the calls identifying participant, date, and time of the calls, recordings of undercover purchases of narcotics, tracking and search warrant applications, and laboratory reports. While voluminous material has been produced, the Moving Defendants have had—and, as trial is not scheduled to begin until April 14, 2014, will have—adequate time to review the documents. *See United States v. Columbo*, No. 04 Cr. 273, 2006 WL 2012511, at *6 (S.D.N.Y. July 18, 2006) (denying bill of particulars in a case with voluminous discovery because the defendants had time before trial to review the discovery).

The Moving Defendants' request for specifics on each transaction they allegedly participated in is the type of information that the Second Circuit has ruled to be beyond the scope of the function of a bill of particulars. *See Cohen*, 518 F.2d at 733. Furthermore, because the Moving Defendants are liable for drugs distributed by co-conspirators, *see United States v. Snow*, 462 F.3d 55, 72 (2d Cir.2006) (explaining that a conspirator "may be held responsible for all reasonably foreseeable acts of others in furtherance of the conspiracy") (internal citation omitted), a list of the specific transactions allegedly attributed to each of them is not necessary to their defenses.

The cases that the Moving Defendants cite in support of her claim are far more complex than this case. *See United States v. Rajaratnam*, 09 Cr. 1184, 2010 WL 2788168, at *2 (S.D.N.Y. July 13, 2010) (observing the characterization of the case as the "largest hedge fund insider trading case in history"); *United States v. Savin*, 00 Cr. 45, 2001 WL 243533, at *3 (S.D.N.Y. Mar. 7, 2001) (granting bill of particulars request in case with approximately 100,000 pages of discovery); *United States v. Nachamie*, 91 F.Supp.2d 565, 571 (S.D.N.Y. 2000) (noting that the indictment did not specify which of 2,000 Medicare claims were allegedly fraudulent). Given the facts at issue here, the Court is persuaded that the Moving Defendants are able to adequately prepare for trial without a bill of particulars. *See United States v. Del Rosario*, No. 12 Cr. 81, 2012 WL 538243, at *2 (S.D.N.Y. Feb. 17, 2012) (denying motion for bill of particulars). Accordingly, the motion for a bill of particulars is denied.

## III. *BRADY MATERIALS*

The Moving Defendants request disclosure of exculpatory evidence. The Government is obligated to disclose material exculpatory or impeaching information and evidence bearing on any of the issues raised by the indictment or the government's proof at trial to the defendant, *see Brady*, 373 U.S. at 87, 83 S.Ct. 1194; *Giglio v. United States*, 405 U.S. 150, 154–55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), "in

time for its effective use at trial," *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir.2001).

The Moving Defendants do not specify any *Brady* material that should be disclosed. The Government states that it is unaware of any *Brady* material but that it will provide timely disclosure if it learns of the existence of any such materials. At this stage, four months before trial, the Government's representation is sufficient. *See United States v. Gallo*, No. 98 Cr. 338, 1999 WL 9848, at *8 (S.D.N.Y. Jan. 11, 1999). Therefore, the Moving Defendants' motion for *Brady* material is denied.

## IV. *RULE 404(B) EVIDENCE*

Pursuant to Rule 404(b) of the Federal Rule of Evidence, the Government must disclose any prior bad acts evidence that it intends to use at trial. No strict disclosure deadline is included in the rule, and courts have allowed 404(b) disclosures as late as several days before trial. *See, e.g., United States v. Valenti*, 60 F.3d 941, 945 (2d Cir.1995). The Court accepts the Government's suggestion that the parties should agree on a schedule for disclosure of 404(b) evidence in advance of trial. Consequently, the Moving Defendants' motion for immediate disclosure of Rule 404(b) material is denied.

## V. *SEVERANCE*

Defendant Pauley moves for severance. He argues that (1) his defense is inconsistent with his co-defendants' defense and necessitates severance, (2) he will be subjected to spillover prejudice, and (3) the reasons for joinder are weak.[5] The Gov-ernment counters that Pauley has not overcome the strong preference for trying jointly indicted defendants together. *See United States v. Rosa*, 11 F.3d 315, 341 (2d Cir.1993) (stating that the "principles that guide the district court's consideration of a motion for severance usually counsel against denial"). The Court agrees with the Government and denies Pauley's motion.

### A. *LEGAL STANDARD*

 Absent substantial prejudice, defendants jointly indicted should be tried together, *United States v. Ventura*, 724 F.2d 305, 312 (2d Cir.1983), because joint trials "serve the interest of justice by avoiding the scandal and inequity of inconsistent verdicts," *Richardson v. Marsh*, 481 U.S. 200, 210, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). Severance should be granted only where a "joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). Even where the defendant shows a risk of prejudice, methods other than severance, such as limiting instructions, can cure the risk. *See United States v. Potamitis*, 739 F.2d 784, 790 (2d Cir. 1984).

### B. *DISCUSSION*

 The Court finds Pauley's arguments for severance unpersuasive. First, Pauley states that he plans to admit having distributed powder cocaine but deny intent to participate in a "crack" cocaine

---

5. Pauley also claims that a joint trial of the eight remaining defendants in the Indictment would run afoul of *United States v. Casamento*, 887 F.2d 1141 (2d Cir.1989). The Court is not persuaded. *Casamento* establishes a presumption against a joint trial of more than *ten* defendants, and even then permits such a joint trial when the Government offers "an especially compelling justification." *Id.* at 1152. The Court sees no reason to preclude a joint trial of the eight defendants in this case.

conspiracy. He asserts that his defense creates a risk of prejudice because it is inconsistent with his co-defendants' defense. However, differing defenses do not require severance unless "acceptance of one party's defense would tend to preclude the acquittal of [the] other." *United States v. Salameh*, 152 F.3d 88, 116 (2d Cir.1998) (internal citation omitted). Pauley does not demonstrate how his defense precludes the jury from acquitting his co-defendants or vice versa.

Second, Pauley claims that he faces spillover prejudice from the large amount of trial evidence that will be unrelated to his guilt. Pauley's argument overlooks a central tenet of conspiracy law—evidence of the conduct of Pauley's alleged co-conspirators is attributable to Pauley as long as that conduct was reasonably foreseeable to Pauley. *See Snow*, 462 F.3d at 72. But even assuming that a joint trial will involve evidence not relevant to Pauley's prosecution, Pauley fails to demonstrate why any potential spillover prejudice necessitates severance. *United States v. Carson*, 702 F.2d 351, 367 (2d Cir.1983) (acknowledging that "the fact that evidence may be admissible against one defendant but not another does not necessarily require a severance"). A limiting instruction to the jury would be an appropriate, less extreme method than severance to cure the potential spillover prejudice. *See Potamitis*, 739 F.2d at 790.

Finally, Pauley suggests that there are no significant reasons for joinder in this trial. This argument turns the standard for severance on its head: it is Pauley who must prove that severance is necessary. *See Zafiro*, 506 U.S. at 539, 113 S.Ct. 933. In any event, because the Indictment alleges that "the defendants . . . participated in a common plan or scheme," a joint trial is strongly favored. *See Salameh*, 152 F.3d at 115.

For all of the reasons stated above, Pauley's severance motion is denied.

## VI. *ALLEGED SURPLUSAGE IN INDICTMENT*

Pursuant to Federal Rule of Criminal Procedure 7(d), R. Martinez moves to strike the alleged alias "Rafaelito" from the Indictment caption. Courts may grant motions to strike surplusage only where it is "not relevant to the crime charged and [is] inflammatory and prejudicial." *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir.1990) (internal citation omitted). Furthermore, "aliases and nicknames should not be stricken from an Indictment when evidence regarding those aliases or nicknames will be presented to the jury at trial." *United States v. Elson*, 968 F.Supp. 900, 909 (S.D.N.Y.1997).

█ The Government states that wiretap evidence refers to R. Martinez as "Rafaelito"; therefore, the alias is relevant to the charges in the Indictment. In addition, R. Martinez does not explain why—and the Court can see no reason why—the alias, which apparently derives from his own first name, is inflammatory and prejudicial. Accordingly, R. Martinez's motion is denied.

### *ORDER*

For the reasons set forth above, it is hereby

**ORDERED** that the motion (Dkt. No. 80) of defendant Maria Duprey to suppress evidence, for a bill of particulars, and to join in co-defendants' motions is DENIED; and it is further

**ORDERED** that the motion (Dkt. No. 76) of defendant Brian Gilbert to suppress evidence, for disclosure of exculpatory evidence, for disclosure of prior bad acts evidence, and to join in co-defendants' motions is DENIED; and it is further

**ORDERED** that the motion (Dkt. No. 79) of defendant Lazaro Martinez to join in codefendants' motions is DENIED; and it is further

**ORDERED** that the motion (Dkt. No. 75) of defendant Rafael Martinez to suppress evidence, for disclosure of exculpatory evidence, for disclosure of prior bad acts evidence, and to strike surplusage from the indictment is DENIED; and it is finally

**ORDERED** that the motion (Dkt. No. 78) of defendant Rosell Pauley for severance and to join in co-defendants' motions is DENIED.

**SO ORDERED.**